Signed and Filed: April 27, 2012

_____
**THOMAS E. CARLSON**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Case No. 10-32053 TEC |
| EL CAMINO CHARTER LINES, INC., dba EL CAMINO TRAILWAYS, | ) Chapter 11 |
| Debtor. | ) |

**MEMORANDUM DECISION RE DEBTOR'S OBJECTION TO UNSECURED DEFICIENCY CLAIM OF TCF EQUIPMENT FINANCE, INC.**

On April 10, 2012, the court held a trial regarding Debtor's objection to the claim of TCF Equipment Finance, Inc. (TCF). Ruth E. Auerbach appeared for Debtor. Margaret E. Garms appeared for TCF.

Upon due consideration, and for the reasons set forth below, the court determines that TCF has an allowed unsecured deficiency claim in the amount of $375,705.

**FACTS**

TCF financed Debtor's acquisition of six buses. Three of the buses were acquired through secured loans; the remaining three buses were leased from TCF. Debtor surrendered all six buses to

MEMORANDUM DECISION
RE DEBTOR'S OBJECTION                -1-

TCF in 2011. TCF sold all six buses and applied the sale proceeds to the amounts due under the secured loan and the lease. The parties agree that the balance due under the two contracts after application of the sale proceeds is $386,052, including all fees and expenses.

The dispute before the court is whether TCF sold its collateral in a commercially reasonable manner, and if not, what damages Debtor suffered as a result of TCF's failure to do so. The court heard the testimony of five witnesses regarding the manner in which the buses were sold, the appraised value of the buses at the time they were sold, and the sale price actually obtained for the buses.

**1. Buses Sold to ABC Companies**

TCF caused three of the surrendered buses (numbers 34, 36, and 738)[1] to be delivered to ABC Companies (ABC). ABC is the largest seller of used buses in North America. One bus (36) was delivered to ABC in January 2011; the remaining two buses were delivered in July 2011. All three buses were inspected by ABC, were listed for sale on ABC's website, and were available for examination by prospective purchasers on ABC's lot. ABC was to be paid a four-percent commission on any sale it arranged.

It is undisputed that the prime season for selling used buses is between January and June of each year.

ABC located two parties that made offers to purchase. In October 2011, the first potential purchaser offered to buy buses 34 and 36 for $140,000 each. TCF made a counter-offer to sell the buses for $155,000 each, but that offer was refused and no sale was

---

[1] The numbers used to identify each bus are the last numbers of the VIN.

made. Sometime after October 2011, the second potential purchaser located by ABC offered to buy buses 34 and 36 for $100,000 each. TCF refused that offer. TCF received no further offers regarding buses 34 and 36, and no offers at any time regarding bus 738.

On February 27, 2012, two months into the peak resale season, and when it had received no further offers to purchase any of the three buses it had listed for sale through ABC, TCF sold all three buses to ABC. ABC paid TCF $125,000 for bus 34, $135,000 for bus 36, and $30,000 for bus 738.

Debtor's appraiser testified that in ready-to-drive condition as of the time of sale, bus 34 was worth $195,000, bus 36 was worth $230,000, and bus 738 was worth $65,000. After ABC purchased the buses, it expended $5,677 to repair bus 34, $7,633 to repair bus 36, and $509 to repair bus 783.

**2. Buses Sold to MCI**

The remaining three buses surrendered to TCF had been manufactured by Motor Coach Industries (MCI). MCI was the second-largest seller of used buses in North America. TCF caused the three MCI buses (355, 743, and 784) to be listed for sale through MCI, which would receive a five-percent commission on any sale arranged. All three buses were delivered to MCI sometime after July 2011, but were not inspected and ready for sale until September 2011.

There is no clear evidence that any of the buses delivered to MCI were ever advertised for sale on MCI's website. Mr. Guralnick, who supervises used bus sales for MCI, testified that MCI does not advertise used buses on its website until the former owner's decals are removed, and that MCI did not remove the decals on buses

743 and 784 until it purchased those buses from TCF in December 2011. Mr. Guralnick testified that bus 355 was listed on the website, although he did not remember TCF authorizing him to remove the decals on that bus, and was unable to explain how the bus would have been listed on the website without authorization to remove the decals. No third-party offers were received for any of the buses delivered to MCI.

TCF sold buses 355, 743, and 784 to MCI on December 27, 2011. MCI paid TCF $190,991 for bus 743, $165,185 for bus 784, and $201,119 for bus 355.

The buses were sold to MCI as is, and MCI subsequently spent $37,662 to repair bus 743, $27,663 to repair bus 784, and $15,283 to repair bus 355.[2] Debtor's appraiser testified that in ready-to-drive condition as of the time of sale, bus 743 was worth $235,000, bus 784 was worth $200,000, and bus 355 was worth $286,000.

MCI resold bus 355 to a third party in January or February 2012 for $235,000.

**DISCUSSION**

**A. Governing Law**

Under the Uniform Commercial Code[3], a secured creditor must dispose of the collateral securing the repayment of an obligation in a manner that is commercially reasonable. UCC § 9-627(b).

TCF bears the burden of proving that it sold the buses in a a commercially reasonable manner. UCC § 9-626(a)(1), (2).

---

[2] The repairs to bus 355 were ordered before TCF sold the bus, but were paid for by MCI.

[3] The contract between Debtor and TCF states that it is to be governed by Minnesota Law. The Debtor is domiciled in California. There is no difference between California law and Minnesota law with respect to the sections of the UCC at issue here.

**MEMORANDUM DECISION
RE DEBTOR'S OBJECTION**

If the court determines that the sale of any of the buses was not commercially reasonable, TCF's deficiency claim must be reduced to the amount it would have been if TCF had sold the buses in a proper manner. It is presumed that the appropriate reduction is the full amount of the deficiency, unless TCF proves that a lesser reduction is appropriate. UCC § 9-626(a)(3), (4).

This court will consider the following factors in determining whether the manner of sale was commercially reasonable.

1. The extent and manner in which the sale was advertised.
2. The length of time the sale was advertised.
3. Whether the sale was public or private.
4. Whether the collateral was repaired as needed before the sale.
5. Whether prospective buyers had an adequate opportunity to inspect the collateral.
6. Whether the sale was wholesale or retail.
7. Whether the collateral was sold in bulk or in parcels.
8. Whether the debtor and any guarantors were given adequate notice of the sale.
9. The number and amount of bids received.
10. The price achieved (although a low price by itself does not show that the sale was not commercially reasonable).

See Westgate State Bank v. Clark, 642 P.2d 961, 969-72 (Kan. 1982).

**B. Application of Governing Law to Sale of Buses to ABC**

I find that the sale to ABC satisfies nine of the ten factors identified immediately above.

(1) A private sale was the best means of maximizing the price received.

(2) The buses were properly offered for sale individually rather than in bulk.

(3) Debtor and the guarantor received adequate prior notice of the sale.

(4) It was proper to sell the buses wholesale by using a broker.

(5) The buses were adequately advertised by being listed on ABC's website. ABC is the largest seller of used buses in the nation.

(6) The buses were advertised for an adequate length of time. Two of the buses were listed for seven months, the third bus was listed for thirteen months. The buses were sold two months into the January-June high season.

(7) Prospective buyers had a reasonable opportunity to inspect the buses on the ABC lot.

(8) The repairs necessary to put the buses in full working order had not been completed while the buses were offered for sale, but the buses had been inspected, the cost of necessary repairs had been estimated, and the repairs identified as necessary were sufficiently minor that the fact that repairs had not been completed would not have deterred potential purchasers.

(9) The number and content of the offers received supports TCF's decision to sell the buses to ABC. At the time TCF sold the buses to ABC, two months of the high season had passed without TCF receiving any additional offers to purchase. Moreover, the value of the buses seemed to be declining; the second offer TCF had received was substantially less than the first offer TCF had received. The price at which TCF sold to ABC was only slightly below the highest offer TCF had received when adjusted for the commission avoided.

|     | Bus | Highest Offer less 5% Commission | Price Paid to ABC |
| --- | --- | --- | --- |
|     | 34  | $134,400 | $125,000 |
|     | 36  | $134,000 | $135,000 |
|     | 738 | None | $60,000 |

The final factor, price received, weighs against a finding that TCF sold the buses in a commercially reasonable manner. The sale price as a percentage of Debtor's appraised value is shown below. The price that would have been received in a commercially reasonable sale is adjusted to reflect the commission avoided through direct sale to ABC, and for repairs made after purchase by ABC (Debtor's appraisal assumes that each bus is in ready-to-drive condition).

| Bus | Sale Price to ABC | Appraised Value | Repairs by ABC | Commission Avoided | Adjusted Appraised Value | Sale Price / Adj. Appraised Value |
| --- | --- | --- | --- | --- | --- | --- |
| 34  | $125,000 | $195,000 | $5,677 | $7,800 | $181,523 | 69% |
| 36  | $135,000 | $230,000 | $7,622 | $9,200 | $213,178 | 63% |
| 738 | $30,000 | $65,000 | $509 | $2,600 | $61,891 | 48% |

The fact that another form of sale might have yielded a higher purchase price does not by itself demonstrate that a sale was not commercially reasonable. UCC § 9-627(a).

Upon consideration of all the facts and circumstances, and of all the measuring standards identified above, I find that the sale of buses to ABC in late February 2012 was conducted in a commercially reasonable manner.

**C. Application of Governing Law to Sale of Buses to MCI**

I find that the sale of three buses to MCI was not conducted in a commercially reasonable manner for the following reasons. (1) I find that buses 743 and 784 were never advertised for sale on the MCI website. Mr. Guralnick testified that used buses were not listed on the website until the decals of the former owner are

removed, and that in this case the decals on buses 743 and 784 were not removed before MCI purchased the buses from TCF. Thus, buses 743 and 784 were never effectively advertized for sale to potential purchasers. In this regard, it is worthy of note that no third party made an offer to purchase either bus.

(2) Bus 355 was not advertized for a sufficient period of time before it was sold to MCI. If advertized at all, bus 355 was advertized for no more than three months, and that entire three-month listing period occurred during the off season for used bus sales. Again it is worthy of note that no third-party offers were received for bus 355.

(3) TCF offered no admissible evidence to support the reasonableness of the price obtained from MCI. TCF was not advised by any independent expert in negotiating the sale to MCI (MCI was obviously acting on its own account and not acting on behalf of TCF in negotiating the terms of the purchase). Although Mr. Laschenski testified that inside experts at TCF prepared an analysis supporting the adequacy of the price obtained, Mr. Laschenski had no personal knowledge of that analysis, and TCF did not attempt to introduce a copy of any written analysis.

(4) The lack of advertising and adequate expose to the market, together with the lack of any expert analysis supporting the terms of the sale, by itself shows the sale not to be commercially reasonable.

**D. Whether TCF's Deficiency Claim Should be Reduced**

Section 9-626(a) of the Commercial Code provides in relevant part:

> In an action arising from a transaction, other than a consumer transaction, in which the amount of a deficiency

```
            or surplus is in issue, the following rules apply: ...
            (3)... if a secured party fails to prove that the
            collection, enforcement, disposition, or acceptance was
            conducted in accordance with the provisions of this part
            relating to collection, enforcement, disposition, or
            acceptance, the liability of a debtor or a secondary
            obligor for a deficiency is limited to an amount by which
            the sum of the secured obligation, expenses, and
            attorney's fees exceed the greater of:
            (A) the proceeds of the collection, enforcement,
            disposition, or acceptance; or
            (B) the amount of proceeds that would have been realized
            had the noncomplying secured party proceeded in
            accordance with the provisions of this part relating to
            collection, enforcement, disposition, or acceptance.
            (4) For purposes of paragraph (3)(B), the amount of
            proceeds that would have been realized is equal to the
            sum of the secured obligation, expenses, and attorney's
            fees unless the secured party proves that the amount is
            less than that sum.
```

In applying section 9-626 to determine whether the deficiency claim of TCF should be reduced, I rely upon the following assumptions, procedures, findings of fact, and conclusions of law.

(1) With respect to buses 743 and 784, I use the value determined by Debtor's appraiser to be the gross sale price that would have been received if those buses had been sold in a commercially reasonable manner.

(2) With respect to bus 355, I will use the price received by MCI when the bus was resold by MCI as the gross sale price that would have been received had the bus been sold in a commercially reasonable manner. I note that MCI was a sophisticated seller and had every incentive to maximize the price it received, and that a market transaction is likely a more accurate indicator of value than an appraisal.

(3) The gross sale prices specified above should be adjusted for repairs performed at the expense of MCI. This is so because Debtor's appraiser valued buses 743 and 784 in ready-to-drive

**MEMORANDUM DECISION**
**RE DEBTOR'S OBJECTION**                -9-

condition, and because the sale price actually received for bus 355 took account of repairs paid for by MCI. I find that the following expenditures for repair were reasonable and necessary to bring the buses into ready-to-drive condition: $37,662 for bus 743; $27,663 for bus 784; and $15,283 for bus 355. In determining the necessity and cost of repairs, I credit the testimony of Mr. Guralnick.

(4) The gross sale price for buses 743 and 784 should be adjusted for the commission that would have been paid had the buses been sold to third parties at the appraised value. No such adjustment should be made to the sale price for bus 355, because MCI paid no commission when it resold that bus for its own account.

(5) I determine that under section 9-626, TCF's deficiency claim should be reduced by the amount by which the net proceeds from a commercially reasonable sale of the three buses exceeds the amount actually received by TCF from the sale of the three buses.

As shown below, I find that TCF would have received $10,642 more if the buses had been sold in a commercially reasonable manner. I conclude that the deficiency claim of TCF against Debtor should be reduced by that amount, pursuant to section 9-626.

|  | Bus 743 | Bus 784 | Bus 355 | Total |
|---|---|---|---|---|
| Actual net sale price | $190,991 | $165,185 | $201,119 | |
| Gross price from proper sale | $235,000 | $200,000 | $235,000 | |
| Less necessary repairs | $37,662 | $27,663 | $15,283 | |
| Less 5% commission | $11,750 | $10,000 | $0 | |
| Net proceeds from proper sale | $185,588 | $162,337 | $219,717 | |
| Proper net price less actual price | ($5,403) | ($2,848) | $18,598 | $10,347 |

**CONCLUSION**

TCF sold buses 34, 36, and 738 in a commercially reasonable manner. TCF did not sell buses 743, 784, and 355 in a commercially reasonable manner, and would have received $10,347 more in net

proceeds had it done so.  TCF's deficiency claim should be reduced by the $10,347 shortfall in proceeds caused by its commercially unreasonable sale of buses 743, 784, and 355.

**\*\*END OF MEMORANDUM\*\***